PADGITT, by Next Friend, Appellant, v. MOLL and
CITIZENS RAILWAY COMPANY.

In Banc, December 18, 1900.

1. **Negligence:** CARE DUE TO NEWSBOY. A newsboy, jumping on and
off a moving street car to sell papers, not hailing the car to stop to
receive him, nor signaling those in charge thereof to stop and let him
alight, not asking leave to board, but jumping on and off under cir-
cumstances clearly indicating no purpose to pay fare, having no aim
to be transported but only aiming to avail himself of the presence of
persons thereon likely to buy his papers, is in no sense a passenger,
and the carrier is not under obligations to exercise the high degree
of care due to a passenger, but only ordinary care.

2. **Continuance:** ABSENT WITNESSES: READING AFFIDAVIT. The affida-
vit stated on its face that the witness lived in St. Louis, that he
could be procured at the next term, and set up what he would tes-
tify if present, and that there was no other person by whom such
facts could be proved or fully proved, and the records show such was
true. The appellant agreed that the affidavit might be read to the
jury, but the court of its own motion continued the case for 35 days
to a day certain, but no further effort was made to obtain the ab-
sent witness. *Held*, that the court erred in permitting this affidavit
to be read at the trial on said day, sufficient time having been given
for ascertaining whether or not such evidence was attainable.

3. **Reading Stenographer's Notes to Jury.** Stenographer's notes
taken at the trial are not for the use of the jury, but of the judge.
The jury on the second day after the cause was submitted to them,
sent a note to the trial judge stating they could not agree as to the
facts in the evidence of two witnesses, and asking that they might
have the stenographer's transcript of their testimony, being "satis-
fied that the jury can not agree without" such transcript. *Held*,
that it was error for the court, without the consent of counsel on
both sides, to have ordered the jury again brought into court and
the stenographer to read them his notes of the testimony of such
witnesses.

4. **Negligence:** NEWSBOY JUMPING ON CARS: NO EVIDENCE TO SUSTAIN VERDICT. In spite of such errors against the appellant as are set out in syllabi 2 and 3, the judgment will be affirmed if there is no evidence to show negligence on the part of the street railway company resulting in his injury. The plaintiff was a newsboy ten years old and in no sense a passenger. He jumped on the running board of a slowly moving street car without invitation, for the sole purpose of selling papers to passengers. He offered his papers to a passenger in the front seat, and then passed on toward the rear of the grip car, behind the gripman, his face towards the opposite side of the car, not looking around and not seeing the wagon and horses of the co-defendant, which stood close to the track, and while so doing and while holding to the stanchion, the moving car carried him against the horses or wagon tongue, and thereby he was knocked off, and fell under the wheels of the trailer, so crushing his leg as to make amputation necessary; at the time of the accident, the car was moving at a moderate rate, the gripman was at his post looking ahead, as his duties required him to do, and the conductor was on the rear platform. *Held,* that the question of negligence was not one for the jury on the theory that the plaintiff was a child ten years old, but as there was no evidence of negligence on the part of the street railway, and as the action has abated as to the owner of the wagon and team on account of his death, the judgment for defendant company should be affirmed.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*A. R. Taylor* for appellant.

(1) The plaintiff being upon the car with the knowledge and assent of defendant's servants in charge of the car, and, for that matter, according to the usage and custom of defendant's business, he was entitled to the same care as if he was a passenger for hire. Sherman v. Railroad, 72 Mo. 65; Whitehead v. Railroad, 99 Mo. 271; Buck v. Railroad, 108 Mo. 185. (2) The court erred in allowing the

stenographer, against the objection of the plaintiff, to read from his notes evidence to the jury after the case had been submitted to the jury and after the jury had been considering the verdict many hours, the stenographer not having been sworn. (3) The court erred in allowing the defendant to read the affidavit as to the alleged evidence of William Flippen.

*Smith P. Galt* for respondent.

(1) (a) There was no allegation in the petition that the plaintiff was a passenger, and the case was not brought on that theory. (b) There was a positive admission at the trial that the plaintiff had no permission "to sell papers on this line." (c) The instruction referred to "the knowledge and permission of defendant's gripman and conductor in charge of its cars," while the printed abstracts gave no evidence tending to show that the "conductor" knew at any time that the plaintiff was on the car. (2) A newsboy jumping on the running board of a moving grip car to attempt to sell a paper and then jumping off again, is not a passenger. Booth on Street Railways, sec. 365; Fleming v. Railroad, 1 Abbott N. C. 433; Schaefer v. Railroad, 128 Mo. 64; Sweeney v. Railroad, 10 Allen 368.

VALLIANT, J.—Action for damages for personal injuries.

Briefly stated the petition is that plaintiff, a boy ten years old, engaged in selling newspapers, was received on one of the street cars of defendant corporation by its servants in charge thereof, who permitted him to ride on the car for the purpose of selling newspapers, as was their custom to do; that on this occasion plaintiff was on the run-

ning board of the grip car, and the defendant's servants in charge caused or suffered plaintiff's body to be struck by. the tongue of a wagon, with mules attached belonging to defendant Moll, whereby plaintiff was thrown off and run over by the trailer car and his leg so injured as to render it necessary to be amputated, which was done; that the servants of the corporation defendant were negligent in so causing or suffering the plaintiff to be struck by the wagon, and that negligence directly contributed to his injuries; that defendant Moll was negligent in permitting the wagon with the mules attached to stand on the street in such close proximity to the railway track unfastened and unguarded as to imperil one riding on the street car as plaintiff was, which negligence. combined with that of the servants in charge of the car as above mentioned, caused the plaintiff to be thrown off and injured as stated.   The petition concluded with statements as to his damage  and suffering, and prayed judgment for $15,000.   Answers were general denials and pleas of contributory negligence, as to which plaintiff joined issue.

The testimony on the part of plaintiff tended to show that the accident occurred on Franklin avenue in the city of St. Louis, along which defendant railway company's track is laid; that defendant Moll has a grocery store on the south side  of Franklin avenue, between Sixth and Seventh streets, in front of which on this occasion a delivery wagon belonging to him was standing with the rear end towards the curb and in front of the store, and the horses' heads towards the track and close to it, with barely room for the cars to pass, the horses not hitched and not attended; that the plaintiff, a newsboy ten years old, had for some time previous been in the habit of jumping on the cars of defendant corporation as they passed along there, offering his

newspapers for sale and jumping off when he had gone through that car, then boarding the next car that came along, and so on, plying his vocation; that on this occasion the car stopped at the corner of Sixth and Franklin avenue to take on passengers and then started on again, and the plaintiff jumped on the front end of the grip car on the running board in front of the gripman, offered his papers to a passenger on the front seat, and then passed on towards the rear of the grip car, behind the gripman, walking on the running board, offering his papers for sale to the passengers as he came to them, his face to the north, not looking around and not seeing the wagon and horses, and while so doing and holding to the stanchion, the moving car carried him against the wagon tongue or the horses, and knocked him off the running board, and he fell under the trailer and the wheels run over and crushed his leg, and it was amputated in about two hours afterwards; that at the time of the accident the car was moving at a moderate rate, the gripman was at his post looking ahead, the conductor was on the rear platform.

At the close of the plaintiff's evidence the court gave an instruction at the request of defendant Moll, that as to him the plaintiff was not entitled to recover, and refused a similar instruction as to the defendant railroad corporation. A nonsuit with leave was taken as to Moll, and the trial progressed as to the other defendant.

On the part of the defendant the testimony tended to show that the plaintiff and other newsboys were in the habit of jumping on and off the cars, plying their trade; that the company had often remonstrated and tried to prevent it, but found it impracticable to do so, and had to submit to it; that on this occasion the gripman saw the boy when he got on the car, and saw that he passed towards the rear on the running board, but when the boy passed behind him he

saw him no more, as his duty as gripman required his atten-
tion to the front; that as it was a populous part of the city,
wagons, etc., passing, his custom was to go slowly along
there, and he was going slowly on this occasion; that the
boy slipped and fell off the running board and was not struck
by the wagon at all.   The gripman testified that he told the
boy when he got on the car to look out for the wagons in
front of Moll's; the boy testified that the gripman said noth-
ing to him.

The cause was set for trial October 15, 1894, and when
called for trial on that day defendant moved for a contin-
uance on account of the absence of one William Flippen,
and filed the affidavit of Mr. Galt, attorney for defendant,
in which it was stated that he had caused a subpoena to be
issued for the witness, who was a resident of the city, but
had been unable up to that time to obtain service of the writ.
The affidavit stated: "But affiant and the defendant believe
that said William Flippen is now in said city, and by pros-
ecuting a search therefor his attendance or testimony will
be procured at the next term of said court."   Then the affi-
davit proceeded to set forth what the witness, if present,
would testify to, which was, substantially, that he was a pas-
senger on the grip car, saw the boy jump on the front end of
the running board and walk back calling his papers, and
two other newsboys also jumped on; this boy passed to the
rear of the gripman, and fell off when he was holding to
nothing and was not struck by the wagon or mules or any-
thing; that the gripman was looking ahead, and the car
was going at half speed, that when witness saw the boy
fall he hollowed to the gripman, "Stop, a boy fell off," and
the gripman stopped as soon as possible.   When the affidavit
was filed the plaintiff admitted that if the witness were pres-
ent he would testify as therein stated, and thereupon the

court overruled the defendant's motion for continuance. Then the court, for its own convenience, postponed the trial until November 19, and on that day the trial was begun. The defendant offered to read in evidence from the affidavit, what it stated the witness if present would testify to.  The plaintiff objected on the ground that there was no showing that the witness was not then within the jurisdiction of the court.  The objection was overruled and the plaintiff excepted.

The evidence, instructions and arguments were concluded on November 20, and the jury retired to consider of their verdict, and were still in such retirement on November 21, when they sent the following note to the judge:

"Hon. Judge Fisher:  The jury can not agree as to the facts in the evidence of the gripman, also the boy's.  We ask that we may have a transcript of the evidence of the above-named parties.

"Yours truly,

"W. S. Bartley, Foreman.

"P. S.—Without that I am satisfied this jury can not agree.  W. S. B."

Upon receipt of this note the judge showed it to the counsel in the case, and said that he could not send a transcript of the evidence as desired, but that if the counsel would consent he would send for the jury and allow the stenographer to read to them the testimony of the witnesses referred to.  The counsel for plaintiff said he would consent, but counsel for defendant refused.  Afterwards on the same day the judge sent for the counsel and informed them that he had concluded to allow the stenographer to read his notes of the evidence of the witnesses referred to to the jury, notwithstanding the objection, but the counsel for plaintiff said that he would not consent under those

terms, and withdrew his consent, but the court, over the objection of counsel on both sides had the jury brought in and the stenographer read from his notes as purporting to be the testimony of the gripman and the plaintiff, to which counsel on both sides duly excepted. The court offered to allow them to reargue the case, but they declined to do so, and the jury again retired.

There were elaborate instructions given which it will be unnecessary to copy here, because there is only one point in them of which there is any complaint, and that is the court refused to instruct the jury that "the servants of the defendant in charge of its car were bound to exercise a high degree of care in running and managing said car, so as to prevent the plaintiff from receiving injury whilst so riding upon the running board of said car." The instructions given were to the effect that only ordinary care was demanded.

There was a verdict for defendant railroad company, which was followed by motions of plaintiff to set aside the nonsuit as to Moll, and for a new trial as to the railroad company, which being overruled, plaintiff has appealed. Since the appeal was taken defendant Moll has died and the suit as to him abates.

I.   The court did not err in refusing to instruct the jury that the defendant owed the plaintiff the duty of observing, for his welfare, the same high degree of care that it owed in respect to a passenger. The relation of the plaintiff and defendant to each other in this case was not analogous to that of the parties in the cases, to which we are referred by the learned counsel for plaintiffs under this head: Sherman v. Railroad, 72 Mo. 62; Whitehead v. Railroad, 99 Mo. 263; Buck v. Railroad, 108 Mo. 185. In all of those cases the person injured was on the train or car with the consent of the servant in charge, for the purpose of be-

ing carried.   The first two of those were cases in which the plaintiffs were injured while riding on freight trains on steam railroads, which fact alone would distinguish them from the case of a boy jumping on a street car to sell newspapers and jumping off again while the car is moving.   In the Sherman case the plaintiff, a boy 13 years old, was stealing a ride on a freight train, and when he was discovered the brakeman told him that if he wanted to ride he must help brake, and gave him instructions, and the boy rendered help in that way, and at a station, at the brakeman's request, assisted in coaling, and the conductor knew he was being carried on the train under those conditions.   It was held that he was entitled to be regarded as a passenger and to the same protection as if he had paid his fare.   In the Whitehead case the plaintiff was also a lad of fourteen, who was riding in the caboose of a freight train under circumstances that indicated that he did not expect to pay any fare, but was riding free by the indulgence of the conductor, who knew he was there and apparently consented to his remaining, and it was held that he was a passenger.   The Buck case was one of a street railroad, and the plaintiff was a small boy who was taking a ride with the driver who was in sole charge of the car.   The child rode with the driver on the front platform, and the accident occurred after the car stopped, to let him off and while the driver was assisting him to alight.   No fare was paid or expected, but the child was there by permission or invitation of the driver, and it was held that he was a passenger.   In Muehlhausen v. Railroad, 91 Mo. 332, the driver of a street car, who seems to have been alone in charge of it, invited or permitted a lot of school children to get on the car and ride with him on the front platform, no fare being asked or expected; one of the children fell off, and it was held that he was a passenger.

These cases serve to illustrate the principle that pervades them, which is that when a carrier of passengers for hire, knowingly receives in its car or other conveyance a person who comes in for the purpose of being transported, and the carrier enters upon the act of carrying him, the person while being so carried is a passenger, regardless of whether he has paid or is expected to pay his fare. This principle will include mail agents and newspaper vendors on steam railroads traveling from one end of a route to the other. But a newsboy jumping on and off a moving street car to sell his newspapers, not hailing to stop the car to receive him, nor signaling to stop to allow him to alight, not asking or receiving permission either express or tacit, not asking or waiting for leave or license, but jumping on and off under circumstances that clearly indicate no purpose to pay fare, and no aim to be transported, but only to avail himself of the presence of persons on the car likely to buy his papers, is in no sense a passenger, and the carrier is not under obligation to observe toward him the same degree of care that the law requires to be observed towards a person in the hands of the carrier to be transported. But the law does require of the carrier under such circumstances the exercise of ordinary care, and so the learned judge instructed the jury.

II.   Appellant assigns for error the action of the trial court in allowing the defendant to read in evidence the affidavit as to what the witness Flippen would have sworn to.

The subject of continuances is treated minutely in our Code of Civil Procedure, aiming on the one hand not to compel a party to go to trial when he has done all that can reasonably be expected of him to procure the attendance of his witnesses, and yet a material witness whose testimony

can be obtained is absent, and on the other hand guarding against an abuse of the practice of continuances. And in that connection it is provided (section 2127, Revised Statutes 1889), that if " the court shall find the affidavit sufficient, the cause shall be continued, unless the opposite party will admit that the witness, if present, would swear to the facts set out in said affidavit, in which event the cause shall not be continued, but the party moving therefor shall read as the evidence of such witness the facts so stated in such affidavit," etc. The purpose of that statute is very plain; it is to meet the emergency, to avoid delay, to give the party who is ready an immediate trial, and yet give the other party the benefit of the testimony of his absent witness in the only form available at the time. Ordinarily, a party is entitled to have his adversary produce his witnesses in court, to the end that they may be seen and cross-examined, and the waiving of that right is often no trivial matter. Besides, an affidavit drawn by a skillful lawyer is apt to be very much to the point and is very forceful as evidence. The law will allow it only because the emergency demands it, and the opposite party agrees to it only to avoid delay.

But in this instance, after the plaintiff made the admission which would authorize the affidavit to be read, the court of its own motion postponed the trial for a month and four days. The affidavit stated on its face that the witness resided in St. Louis, and could be produced at the next term, yet when more than a month was afforded the defendant before the trial would be called, no effort was shown to have been made to produce him, but the court suffered the affidavit to be read. The emergency under which the law would have allowed the affidavit to be read had passed, and the consideration which induced the plaintiff to make the admission had failed. This was a very material witness, profess-

ing to have seen the accident, and whose evidence professed to cover every point of the defense. The affidavit said of this witness that there was no other person whose evidence "could have been procured at this term of said court by whom he or it (affiant or defendant) can prove or fully prove the same facts." And the record shows that that was so.

The admission of a party under such circumstances to obtain a present trial, does not stand for all time, but ceases when the emergency ceases. If it should be held to be binding a month later, there is no reason why it should not be so held six months later. A month is as long notice as is ordinarily given of the setting of a cause for trial; certainly it is long enough to obtain the service of process for witnesses residing in the city, or to take their depositions if they are non-residents, or at all events it is long enough to ascertain whether or not the evidence is attainable. The court erred in allowing the affidavit to be read over the plaintiff's objection.

III. Appellant also assigns for error the action of the court in requiring the stenographer to read his notes of the evidence to the jury.

The introduction of the official stenographer to take down the evidence in every case is of very recent date and so far as concerns his official duties we must look to the statute creating the office to learn what they are. The statute declares his duties to be, "To take full stenographic notes of the oral evidence offered in every case tried in said court or division, and of all other proceedings when directed by the judge, to be so reported, together with all objections to the admissibility of testimony and the rulings of the court thereon, and all exceptions taken to such rulings; to preserve all official notes taken in said court for future use, or reference, and to finally deposit the same with the records of

said court according to the directions of the judge thereof; and to furnish any person a long hand transcript of all or any required part of said evidence or oral proceedings upon the payment to him of the fees hereinafter provided. When not reporting in open court, it shall also be his duty to take such notes as may be requested by the judge in chambers, and to furnish the latter a transcript thereof when required." [Section 8228, Revised Statutes 1889; section 10106, Revised Statutes 1899.] Those are all the duties that the law prescribes for him, and whatever else he does is extra-official. He is not made the umpire to decide disputed questions as to what the evidence was. Even in a bill of exceptions containing his transcript of his notes, the correctness of the evidence as set out is proven, not by his attestation, but by the certificate of the judge. It not infrequently occurs that a dispute arises between the parties as to the correctness of the stenographer's report of the evidence, and that dispute is not for him, but for the judge to settle. Assuming that he is honest and capable and writes down the evidence as he understands it, still he is as liable to have misunderstood it as a juror or an attorney or the judge and for that matter it may be said that the judge is as liable as any one else to have misunderstood what the witness said, but the judge's understanding when it comes to the bill of exceptions must prevail, simply because it is necessary to leave the decision to some one, and the law has left it to him.

But the law guards with a somewhat jealous care the province of the jury, even from encroachment by the judge. The duty to hear and weigh the evidence and pronounce upon its preponderance, the duty to find the facts from the evidence as it falls from the lips of the witnesses at the trial, is the peculiar office of the jury. The juror has a right, and it is his duty to base his verdict on the evidence as he

heard it, and he is not required and should not be compelled
to yield his own memory and his own understanding of the
evidence to that of another, even though that other professed
to have taken notes. A juror's memory of the evidence
at that stage of the case is as trustworthy as the steno-
grapher's notes. The purpose of having the testimony
taken down in shorthand, is to preserve it for future refer-
ence after a period has elapsed during which it might not
be so well remembered, and also for the convenience of the
court who is called on to review the case or sign a bill of
exceptions, not only after a considerable time may have
elapsed, but also after he has tried, perhaps, a number of
other cases, and his memory needs refreshing as to the de-
tails of the trial. But jurors who have nothing else to do
until the particular case is ended, whose minds are presumed
to be upon it and who go to the jury room with the testimony
of the witnesses fresh in memory, do not need any such
refreshing. They possess all that the law expects them to
have upon which to base their verdict. If the memory of
the juror is liable to be in error, or if in the confusion of
the trial he may not have heard correctly what the witnesses
said, he is in that respect no more liable to error or misun-
derstanding than any one else engaged in the trial, and at
that stage of the case, at least, the law has made it his par-
ticular province to decide what the evidence was, just as at a
later stage it is the judge's duty to settle a disputed question
of that kind. But while the jury is in the act of exercising
its particular and exclusive office, its province should not
be invaded.

It has been held that it is error to allow a juror to take
notes of the evidence, and carry them to the jury room.
This is for the reason that there is a danger that the jury
give undue weight to the notes as against their own mem-

ories.    [Thompson & M. on Juries, sec. 390; Cheek v. State, 35 Ind. 492.]    And that it is error to furnish the jury with the notes of the evidence taken by the judge at the trial. [Neil v. Abel, 24 Wend. 135; Mitchell v. Carter, 14 Hun 448.]

In Fleming v. Shenandoah, 67 Iowa 505, the jury sent a communication to the judge asking to have the stenographer sent to the jury room to read the evidence to them, and the judge suffered it to be done.    The Supreme Court of Iowa held that to be error.    That was a more flagrant violation of the rule of good practice than the action assigned for error in the case at bar, but the two cases on that point differ only in degree.    It was not suggested in the Iowa case, nor is it suggested here, that the stenographer read the evidence incorrectly.    His opportunity for doing so in the Iowa case without challenge was greater than in the case at bar, but the principle involved in such a practice is the same.    It is not a question of the degree of prejudice in the particular case, which might be a difficult question to decide, but it is of establishing a rule of practice under which a juror may be unduly influenced against his own judgment and contrary to his own memory of the evidence. If the notes are read in the presence of the court and counsel, and a dispute as to their correctness arises, who is to settle it?    If the judge should say that the notes are correct, and a juror, whose memory is clear to the contrary, should say no, which is to prevail, the notes or the juror's memory, so far as his vote and his influence on the verdict is concerned?    The law has not provided rules to govern the trial of such an injected collateral issue, but the theory is that the jurors must settle such questions for themselves, and the judge should wait until the stage of the case is reached at which he may interfere if he thinks wrong has been done.

In this case the learned judge should have adhered to his original purpose to allow the stenographer's notes to be read only on condition that counsel on both sides consented thereto. When this proposition was made the counsel for the plaintiff consented, but counsel for defendant refused to do so. The consent of the plaintiff's counsel was not that it might be done in spite of the defendant's refusal, but that it might be done with the consent of both. This was the judge's proposition. If the counsel for the plaintiff was of the opinion that it would be error to read the notes to the jury, without the consent of both sides, he would be not likely to consent to a transaction which if it should result in a verdict for him the verdict would be of no avail, but if for his adversary it would be valid. At all events, when the judge intimated that he would require the notes to be read in spite of the failure of counsel to agree to it, the plaintiff's attorney withdrew his consent and the notes were read with both sides objecting. However commendable the motive of the judge to prevent a mistrial, we can not approve his decision on that point without establishing a precedent that would lead to a dangerous practice.

IV. It is insisted for defendant that the court should have given its instruction for a nonsuit on the ground of the plaintiff's contributory negligence. If the plaintiff had been a person of mature years the court would have held him guilty of negligence, but as he was a child of ten years the question of his negligence was one for the jury.

*Brace, P. J.*, concurs; *Robinson* and *Marshall, J. J.*, concur in first, second and third paragraphs, but dissent from the fourth paragraph, and for that reason the cause is transferred to Court in Banc.

### In Banc.

PER CURIAM.—In the foregoing opinion written by

*Valliant, J.,* in Division No. one, *Brace, J.,* concurs; *Gantt, C. J., Sherwood, Robinson* and *Marshall, JJ ,* concur in first, second and third paragraphs, but are of the opinion that there is no evidence to show negligence on the part of defendant corporation, and for that reason the judgment should be affirmed and it is so ordered. *Burgess, J.,* absent.