## F. M. DROGMUND, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, November 5, 1906.

1. **PASSENGER CARRIERS: When a Passenger: Motorman's Authority.** A boy riding on a street car at the invitation of the gripman is not a passenger since the gripman has no authority to make the invitation.

2. **———: Trespasser: Duty of Carrier: Humanitarian Doctrine.** The only duty of the carrier when a person is stealing a ride is not willfully or recklessly to injure him after discovering him on the train, but a reckless disregard of the rules of prudence or humanity on the part of the carrier resulting in the injury of a trespasser authorizes an application of the humanitarian doctrine.

3. **———: ———: ———: ———: Instruction.** An instruction telling the jury that if a boy who is a trespasser fell from a car by reason of the conductor's attempting to put him off or to cause him to leave a moving car the defendant was liable is approved as a clear expression of the humanitarian doctrine.

4. **DAMAGES: Personal Injury: Minor's Services: Instruction: Evidence.** An instruction in a personal injury case allowing recovery by the parent for the services of the plaintiff and family in nursing a minor son, is improper where there is no evidence showing the value of such services since they are susceptible of proof of approximate accuracy.

5. **———: ———: Minor Son: Instruction.** Where a parent sues for the loss of his child's services he ought to recover what the services of an obedient child would be during its minority where the child's age, the extent of his injury and that he lives at home, are shown and it should be left to the sound sense and experience of the jury to fix the amount.

6. **PASSENGER CARRIERS: Trespasser: Humanitarian Doctrine: Instruction.** An instruction telling the jury if a boy was not a passenger it was the duty of the conductor to prohibit him from riding and that if the boy stepped from the train at the command of the conductor the carrier was not liable was properly refused as a violation of the humanitarian doctrine where the car was running at a dangerously high rate of speed.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED AND REMANDED.

*John H. Lucas* for appellant.

(1) The court erred in refusing to sustain defendant's demurrer at the conclusion of the case. Raming v. Railroad, 157 Mo. 507; Holwerson v. Railroad, 157 Mo. 239; Jacobson v. Transit Co., 106 Mo. App. 348; Gibeline v. Smith, 106 Mo. App. 549. (2) In giving instructions, one, three and four, asked by plaintiff. No. one: Padgitt v. Railroad, 159 Mo. 152; Raming v. Railroad, 157 Mo. 504; Schepers v. Railroad, 126 Mo. 671; Schaefer v. Railroad, 128 Mo. 71; Nellis, Street Railroad Accident Law, pp. 43, 44, sec. 3; Finley v. Railroad, 64 Hun (N. Y.) 373; Clark v. Kitchen, 52 Mo. 316; Donohue v. Railway, 83 Mo. 560. No. three: Dunn v. Railway; 21 Mo. App. 204; Buck v. Railroad, 46 Mo. App. 568; Schmidt v. Railroad, 46 Mo. App. 395; Bridge Co. v. Schaubacher, 57 Mo. 582; Duke v. Railroad, 99 Mo. 551. No four: Krueger v. Railroad, 84 Mo. App. 366; Schmidt v. Railroad, 163 Mo. 645; Lesser v. Railroad, 85 Mo. App. 326; Heinzle v. Railroad, 182 Mo. 528; Koenig v. Railroad, 173 Mo. 698; Hanheide v. Transit Co., 104 Mo. App. 323. (3) In refusing to give instructions one, two, three, four, six, seven and eight. No. one: See authorities instruction one given for the plaintiff. No. two: Campbell v. Railroad, 175 Mo. 185; Raming v. Railroad, 157 Mo. 506. No. three: See authorities sub. 6 herein. No. four: Campbell v. Railroad, 175 Mo. 185; Raming v. Railroad, 157 Mo. 506. No. six: Raming v. Railroad, 157 Mo. 506. No. seven: See authoritites under demurrer. No. eight: See authorities under No. 3, given instructions.

*McCleur & Bowling* for respondent.

(1) The court did not err in refusing to give defendant's demurrer at the conclusion of the case. Buck

v. Railroad, 108 Mo. 185; Whitehead v. Railroad, 99 Mo. 263; Sherman v. Railroad, 72 Mo. 62; Muehlhausen v. Railroad, 91 Mo. 332; Padgitt v. Railroad, 159 Mo. 151; Spohn v. Railroad, 101 Mo. 456; Faber v. Railroad, 116 Mo. 93; Brill v. Early, 115 Mo. 596. (2) The court properly gave instructions one, three and four asked by plaintiff. No. one: See first five cases cited under point one. No. three: Blackwell v. Hill, 76 Mo. App. 55; Bartley v. Trorlicht, 49 Mo. App. 219; Rosenkranz v. Railroad, 108 Mo. 9; Grogan v. Foundry Co., 87 Mo. 326; Schmitz v. Railroad, 119 Mo. 256. No. four: Schmidt v. Railroad, 163 Mo. 645. (3) Instructions one, two, three, four, six, seven and eight, asked by defendant were properly refused. No. one: See authorities under point one. No. two: Brown v. Railroad, 66 Mo. 558; Farber v. Railroad, 139 Mo. 283; Brill v. Eddy, 115 Mo. 596; Carter v. Railroad, 98 Ind. 552. No. three: Sherman v. Railroad, 72 Mo. 62. No. four: Brown v. Railroad, 66 Mo. 588. No. six: Brown v. Railroad, 66 Mo. 588; Kline v. Railroad, 38 Cal. 40; Thompson on Carriers of Passengers, 375. No. seven: See authorities under point one. No. eight: Blackwell v. Hill, 76 Mo. App. 55.

BROADDUS, P. J.—This is a suit by the father for damages for loss of services of his minor son alleged to have been the result of the wrongful act of the defendant, whereby said son was severely and permanently injured. Owing to certain questions raised by counsel it is necessary that a full statement of the substance of the cause of action should be set forth in this opinion.

The plaintiff is the father of Otto L. Drogmund, a minor twelve years of age at the time of the alleged injury. "The defendant was operating at the time by means of a cable a street railway on Twelfth street in Kansas City, Missouri; that its trains consisted of two cars, known respectively as a grip car and a trailer; that

prior to the 30th day of January, 1900, the defendant's servants in charge of and operating its cars on said street, invited and permitted boys to ride on its train at a certain point on its railroad near the east end of its line where it made a loop for its cars to return west; that plaintiff's said son was among the number of boys that defendant's servants permitted and invited to ride on its trains while its cars were traversing said loop; "that on the said 30th day of January, 1900, his said son Otto L. Drogmund, boarded at Twelfth and Olive streets one of said trains going eastward to ride around said loop; that when he was so riding he stood upon the grip car, and rang the bell for the gripman, at the gripman's request, at the cross streets and when it started westward; that after it started westward and after the cars had gone about the distance of two blocks, one Thomas Scanlon defendant's conductor in charge told said Otto L. Drogmund to get off the car, and then stooped down as if he was picking up something, and then made a motion as if he was going to throw something at the boy, at the same time telling him to get off, and then picked up a broom and raised it as if to throw it at or hit said boy, at the same time approaching nearer to the boy repeating his orders in a loud and peremptory tone, to get off, and said boy believing that said conductor was going to hit him with said broom, stooped down at the end of the seat to avoid being hit, and lost his hold, and fell off said train with great force and violence upon the pavement, bruising, wounding and maiming his head, causing a fracture of his skull, etc."

"That said boy received said injury by reason of the carelessness and negligence of said defendant, its officers, agents and servants in the following particulars: By reason of the carelessness and negligence of permitting boys of tender years to ride upon its cars at the eastern end of said street railway, as aforesaid, and by reason of the carelessness, negligence and wantoness of

said Scanlon, in so frightening said boy on the train as aforesaid."

The evidence of the boy Otto was that he was permitted to ride on the defendant's cars as stated in the petition; that the gripman of the car permitted him to so ride, directing and permitting him to ring the bell at suitable times and places; that at the time in question he was riding on the car and ringing the bell with the permission of the gripman, when the conductor told him to quit ringing the bell, but that he did not quit when so told, whereupon the conductor Scanlon seized a broom and advanced toward him; that he and Scanlon were good friends and at first he thought the conductor was not in earnest, but he finally concluded that he was and as he had the broom in a threatening attitude, he dodged, lost his equilibrium and fell from the car to the street pavement.

The defendant's gripman and conductor deny that they permitted the plaintiff's son and other boys to ride on the car, but that they would do so while the cars were making the loop, jump on and off. That at the time the boy was injured, he got onto the grip car with other boys while he was on the trailer, that as he went forward he took a broom in his hand whereupon the other boys jumped from the car, but the plaintiff's son remained, when he raised the broom not with the intention of hitting as he was not in striking distance but to scare him off, and that the boy jumped off and the cars proceeded on their way, and that he did not know at that time that he was injured.

The defendant interposed a demurrer to plaintiff's evidence which was overruled. The finding and judgment were for the plaintiff from which defendant appealed.

The contention of defendant is, that, the facts in evidence show that the boy was a trespasser and not a passenger, and as the act of the conductor was not wan-

ton the demurrer should have been sustained. In Buck v. Railway, 108 Mo. 179, it was held, where a small boy became a free passenger on defendant's street cars by consent of the driver in charge, that defendant became bound to exercise toward him the same care as toward other passengers. In Sherman v. Railway, 72 Mo. 62, it was held that, "a person riding on a freight train on which passengers are allowed to be carried, is to be regarded as a passenger, although he may have boarded the train without the permission of the conductor and paid no fare, if the conductor, after becoming aware of his presence, permits him to remain." In Muelhausen v. Railroad, 91 Mo. 332, the case was the same on principle.

But in the more recent case of Raming v. Railway, 157 Mo. 477, it was held: "A newsboy who jumps on a street car without signaling it to stop, for the purpose of selling papers, and jumping off again, is not a passenger, so as to charge the company with special care to avoid injuring him though he intended to pay fare if the conductor asked him; it appearing that the conductor did not see him, and that the gripman, who had no authority to grant or refuse him permission to ride, tried to eject him." In the prior cases cited the persons were permitted to ride on the cars by those in charge without paying fare, which the court held made them passengers, but in the case at bar, under the ruling in the latter case the gripman had no authority to grant plaintiff permission to ride on the car in question. He was not therefore a passenger and such is the ruling. [Padgitt v. Moll, 159 Mo. 143.] The court committed an error in instructing the jury that under the facts they might find that the plaintiff's son was a passenger.

Notwithstanding the boy was not a passenger, but a trespasser, the defendant was not under obligations to exercise for his safety the highest degree of care due a passenger, but it was under obligation to exercise ordinary care. [Padgitt v. Moll, supra.] Or as expressed in

Farber v. Railway, 116 Mo. 81: "The only duty the company owes a trespasser stealing a ride on the train is not to willfully or recklessly injure him after discovering him on the train." "A servant of a railroad company in the performance of his duty in removing a trespassing boy from the company's train is bound to exercise ordinary care." [Brill v. Eddy, 115 Mo. 596.]

The law thus seems to be well settled. This brings us to the insistence of the defendant that, as the boy was not a passenger the company was only bound to use ordinary care in removing him from the car, and it would not be liable unless the act of its conductor in so doing was characterized by willfulness or wantonness of which there is no evidence. The defendant's statement of the law as we have seen, is clearly right, but in theory it is in error in its contention that the act of the conductor in putting the boy off the car while it was going at full speed was neither willful, wanton nor reckless. And the judge who tried the case seemed to have been of a similar opinion, and so instructed the jury. Defendant's theory seems to be that in order to constitute wantonness, the act must contain the element of malice, or the intention to do a wrongful act regardless of the consequences which may follow. This theory of defendant's counsel under a recent decision of the Supreme Court is not now, if it ever was, the law. While the intentional doing of a wrongful act, that is willfully, may be included in the definition of the humane doctrine, it does not include the whole of said doctrine. A reckless or wanton disregard of all the rules of prudence or humanity, by one person resulting in the injury of another authorizes the application of the doctrine. That is a failure to act so as to prevent injury to another, by a person who owes to the other the duty of ordinary care brings the case within the application of the doctrine. [Moore v. St. Louis Transit Co., 194 Mo. 1, 92 S. W. 390.] Before the decision there was much

controversy and doubt in the minds of the judges and lawyers of the State as to what was understood as the humanitarian doctrine in Missouri.

The petition alleges that the boy fell from the car while it was in motion, in his effort to dodge a stroke from the broom in the hand of the conductor in his attempt to force him from the car. The plaintiff's evidence tends to support the allegation. The conductor himself stated that his object in making the demonstration with the broom was to force the boy off the car. Notwithstanding the court adopted defendant's theory of the humane doctrine it gave an instruction based upon the facts. It reads: "The jury are instructed that the defendant had no right to put plaintiff's son off the train when the same was in motion, and that if you shall find from the evidence that plaintiff's minor son fell from defendant's car by reason of the conductor attempting to put him off the car, or cause him to leave the car while the car was in motion, your verdict must be for the plaintiff." The instruction is predicated upon the facts and is as clear an expression of the humanitarian doctrine as could be desired. Notwithstanding the boy recklessly boarded the car while it was in motion, ordinary care and prudence required that defendant's agents should put him off at the next crossing or stopping place, but to force him to leave the car while it was going at full speed, as all agree that it was, was a wanton and reckless act upon the part of the conductor. This case is not like the case of Raming v. Railway, supra, in some respects. In that case the petition alleged that the boy was a passenger which was not proved, therefore he was not allowed to recover. And it was there shown that he was forced from the car by the gripman; the court holding that the company was not liable as the gripman had no authority to eject passengers from the defendant's cars. This action is not founded upon the boy's rights as a

122 App—11

passenger and the acts complained of were those of the conductor who was in charge and who had authority to eject trespassers. The act of the conductor was the act of the company.

Instruction numbered three is objected to because it authorized a finding for the value of the loss of the boy's services, and the value of the services of plaintiff and family while nursing him, the contention being that there was no evidence before the jury as to the value of such services. The rule of such cases is stated in Duke v. Railroad, 99 Mo. 347, that, where compensatory damages only are given, the recovery must be confined to the actual damages sustained. "And where such damages are susceptible of proof with approximate accuracy, and may be measured with some degree of certainty, they should not be left to the guess of the jury, even in actions *ex delicto.*" It was therefore error to instruct the jury that plaintiff was entitled to compensation for services of himself and family in nursing his minor son, as there was no evidence of the value of such services. Their value was susceptible of proof.

In a recent decision this court had under consideration the question as to proof of the value to the parent of the future services of his minor child in which we said: "Where the evidence showed the child's age, that he lived at home, and the extent of his injuries, it is sufficient to call into requisition the sound sense and experience of the jury to fix the amount of damage." And: "Where a parent sues for the loss of his child's service he ought to recover what the service of an obedient child would be during its minority, since the law presumes that duty will be performed. [Brunke v. Telegraph Co., 112 Mo. App. 623.] And the holding is similar in Parsons v. Railway, 94 Mo. 286. The evidence in this case showed the boy's age, that he lived at home and the extent of his injuries. The instruction therefore was not faulty in that respect. The defendant asked the court

in instruction numbered four to say to the jury in effect that as the boy was not a passenger, it was the duty of the conductor to prohibit him from riding, and if the boy stepped from the train at the command of the conductor, then the plaintiff could not recover. The court refused to so instruct the jury. Taking into consideration the youth of the boy, his want of discretion and the probability of his obeying the command of the conductor, we are of the opinion that the act of the conductor, taking into consideration the circumstance that the car was moving at a dangerous rate of speed, would be a violation of the humanitarian doctrine as we understand it, and the instruction ought not to have been given. But aside from this, there was no evidence to support such an instruction.

What has been said disposes of the other alleged errors occurring during the trial.

For the errors noted the cause is reversed and remanded. All concur.

## ON MOTION FOR REHEARING.

In our original opinion we hold that instruction numbered three should not have been given because "it authorized a finding for the value of the loss of the boy's services and the value of the services of plaintiff and family while nursing him," as there was no evidence as to the value of such services.

Our decision was based upon the rule stated in Duke v. Railroad, 99 Mo. 347. Upon reconsideration, we believe in that respect the opinion was not proper. In Murray v. Ry. Co., 101 Mo. 236, a case similar in principle, the court holds that, "Jurors may well be presumed to be reasonably familiar with the value of such services, and they may measure the same by their own knowledge and experience." And the court makes a distinction in that case from that in Duke v. Railroad, supra. As this is the latest decision of the Supreme

Court that has been called to our attention the opinion herein is modified to conform thereto.

The other grounds assigned for a rehearing, we think, are clearly untenable and we do not deem it necessary to urge reasons other than those given in support of the decision.

Motion overruled. All concur.