SAN ANTONIO TRACTION CO. v. BADGETT.

(Court of Civil Appeals of Texas. San Antonio. June 11, 1913. Rehearing Denied June 28, 1913.)

1. TRIAL (§ 308*)—DELIBERATIONS OF JURY—READING TESTIMONY.

Rev. Civ. St. 1911, arts. 1963, 1964, authorizing the jury disagreeing as to the state-

ment of any witness to apply to the court to have the witness restate his testimony, and authorizing the court on the disagreement of the jury as to any part of a deposition to permit that part to be read to the jury, do not provide for the reading of stenographic notes to the jury disagreeing as to evidence of a witness, and, in the absence of any other statute on the subject, it is not error to refuse to order the reading of stenographic notes to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 743; Dec. Dig. § 308.*]

2. TRIAL (§ 308*)—DELIBERATIONS OF JURY—READING OF TESTIMONY.

It is not error to refuse to permit the stenographic notes to go to the jury in response to a request therefor to enable a juror to convince the other jurors as to the testimony, and not to aid his own memory.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 743; Dec. Dig. § 308.*]

3. CARRIERS (§ 303*) — INJURIES TO PASSENGERS—LIABILITY.

Where a negligent jerk of a street car threw a passenger from the car injuring her, the street railway company was liable, whether she attempted to alight while the car was in motion or not.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1216, 1218, 1224, 1226–1232, 1234–1240, 1243; Dec. Dig. § 303.*]

4. CARRIERS (§ 347*)—PASSENGERS—ALIGHTING FROM MOVING STREET CARS — NEGLIGENCE.

It is not negligence per se for one to alight from a moving street car, but the question is for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

5. EVIDENCE (§ 598*)—TRIAL (§ 139*)—NUMBER OF WITNESSES—QUESTION FOR JURY.

The jury are the judges of the weight and credibility of the testimony, and a verdict sustained by the testimony of one witness and contradicted by several witnesses is not necessarily contrary to the preponderance of the evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2450–2452; Dec. Dig. § 598;* Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

6. DAMAGES (§ 132*) — PERSONAL INJURIES — EXCESSIVE DAMAGES.

Where a person strong before the accident, and earning $50 to $60 a month, was thrown from a street car, and sustained personal injuries consisting of the breaking of the last bone of her backbone which never united, and a depression of her ribs, confining her to bed for seven months, and seriously disabling her for five months more, a verdict for $4,750 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Error to District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by Nancy J. Badgett against the San Antonio Traction Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Templeton, Brooks, Napier & Ogden, of San Antonio, for plaintiff in error. Arnold & Carl, of San Antonio, for defendant in error.

FLY, C. J. This is a suit for damages arising from personal injuries alleged to have been inflicted upon appellee by appellant in negligently starting a car, with a violent jerk or lurch, from which she was about to alight. Appellant pleaded contributory negligence on the part of appellee in stepping from a moving car. The cause was tried by jury, and resulted in a verdict and judgment for appellee in the sum of $4,750.

Deferring to the verdict of the jury, we conclude that appellee was injured in the sum found by the jury through the negligence of appellant in violently jerking its car while appellee was in the act of alighting from it.

[1] The first, second, third, and fourth assignments of error make complaint of the action of the court in not allowing the testimony of J. R. Peche, appellant's conductor, to be read to the jury, necessarily by the stenographer from his notes, the only proposition under the assignments being: "In case of dispute or disagreement on the part of the jury as to the effect of the testimony of any particular witness, the jury have a right to have that testimony repeated to them, and it is the duty of the court upon request to have same done." The only provisions on the subject of recalling witnesses or rereading depositions in case of disagreement of a jury are embodied in articles 1963 and 1964, Rev. Stats. 1911. In those articles no provision is made for the reading of stenographic notes to a jury in case of disagreement as to the evidence of a witness, and it would require legislation to admit of such procedure, although there might be no reason for rejecting the use of such stenographic notes. If the court had ordered the jury to be brought into the courtroom, and had required the stenographer to read from his notes the disputed testimony, while there is no warrant in the law for such action, it might possibly be held such error as could not have injured any one, and consequently not sufficient to form a basis for a reversal. But it was refused, and in the absence of a law permitting or requiring the use of the stenographic notes, when the jury disagree as to evidence, this court cannot hold that the court erred. It might have been well perhaps for the court, if the jury had asked in a legal way for the stenographic report of the evidence, to have suggested that he would have the witness brought upon the stand again, and permit him to detail his testimony to the particular point of disagreement, and we will presume that the court would have done so if it had been practicable to have the witness in attendance; but appellant does not claim that the court erred in failing to make such suggestion, but the contention is that the testimony should have been read from the notes of the stenographer. The decisions of other states under their peculiar statutes cannot be authority for the courts of Texas which must pass upon the

action of the trial judge under the statutes of this state. There are decisions, however, which hold that, in the absence of statutes permitting it, it is error to permit the notes of a stenographer to be read to a jury in case of this disagreement as to certain evidence. Fleming v. Town, 67 Iowa, 505, 25 N. W. 752, 56 Am. Rep. 354; Padgitt v. Moll, 159 Mo. 143, 60 S. W. 121, 52 L. R. A. 854, 81 Am. St. Rep. 347. We hold that it was not error to deny the reading of the stenographer's notes to the jury after their retirement, because there is no statute permitting or authorizing such procedure. Appellant did not in the lower court, and does not now, complain that the witness was not recalled and his testimony heard on the disputed question, but the sole contention is that the court should have had the stenographer's report of the evidence read to the jury.

[2] We fail to see any material difference between the contention of the juror who sought by his affidavit to impeach and destroy his own verdict and that of the other jurors. Peche, the conductor of the car, testified that he gave one bell for a stop for a man to get off, and as the latter swung off the conductor gave two bells which meant that the car should go ahead, and then, when he saw appellee "get up and start right off," he gave one bell to stop, and called to her to wait until the car stopped. He testified: "When I saw her get up to start out, I hollered to her to wait until the car stopped; just as I saw her start to get up I gave one bell, a signal to stop, and the motorman started to stop his car." The juror swore that the disagreement was as to the number of bells or signals that had been given before the accident, and although he swore in his affidavit attached to the motion for new trial that he contended that one signal was given for the man to get off, two to start and another to stop before appellee left the car, and that the other eleven jurors had contended that the third signal was given as an emergency signal after appellee had fallen from the car. But, when he testified, he did not state that the other jurors contended that the last bell was sounded after appellee had fallen off, but merely that it was an emergency signal, which it doubtless was, if it was given as soon as the conductor saw that appellee intended to get off, whether she was in the car, on the step, or on the ground. The juror placed himself in an unenviable light when he swore that he agreed to the verdict because he "was unable to substantiate his contentions to the other members of the jury." It was shown by other testimony, as well as by that of the juror, that he wanted to get the testimony to convince the other jurors, and not to aid his own memory. The court did not err in refusing to permit the stenographer's notes to go to the jury.

The fifth assignment of error assails the second paragraph of the charge of the court on the ground that it permitted the jury to find for appellee, even though the car from which appellee claimed to have fallen was still in motion, and had not stopped to discharge passengers. We fail to find any such intimation in the criticised charge, and appellant does not point it out. The charge presents the ground of negligence alleged in the petition, and made appellant's liability turn on whether it negligently started the car with a jerk as appellee was in the act of alighting. In another portion of the charge the jury were clearly instructed that if appellee started to alight before the car came to a stop, and such attempt was negligent, to find for appellant.

[3] The petition alleged that the jerk of the car was given at a time when the car had either stopped or nearly stopped when the jerk was given which threw appellee from the car. There was evidence to sustain each theory, and the court did not err in presenting both to the jury. If the car had stopped, and a sudden jerk was given which threw appellee to the ground, or if appellee was ready to get off when the moving car came to a stop and was thrown to the ground by a jerk, appellant would be liable. In either event there were allegations and evidence to sustain a verdict against appellant. If the negligent jerk of the car threw appellee from the car and injured her, it was immaterial whether she attempted to alight while the car was in motion or not. In neither case was appellant authorized to suddenly jerk the car and throw her off. The conductor knew that appellee was endeavoring to get off, and he signaled that knowledge to the motorman. The motorman testified that he heard the conductor say, "Wait a minute, lady, until the car stops." He must have known that she was in a position of danger.

[4] It is not negligence per se for a person to alight from a moving car, and, even though appellee may have attempted to alight from the car before it stopped, it was a question of fact for a jury to determine whether she was guilty of negligence in attempting to alight.

[5] In connection with that inquiry the jerking of the car was of much importance, in fact was the turning point in the case, and in view of the contention that all the witnesses to the accident contradicted appellee it may be noted that not one of the witnesses contradicted her statement that there was a sudden jerk of the car about the time appellee was thrown to the ground. The conductor to some extent corroborated the jerk theory when he testified: "The car was increasing its speed when she undertook to get off, he was releasing his brakes to go ahead when she was getting off—because the car had never come to a stop." It may be remarked that the testimony was somewhat peculiar in the face of the statement that the conductor had given the stop signal just as

soon as he saw her get up from her seat. Instead of releasing brakes, the motorman should have been applying them. It is true that the conductor tried to escape the effect of his statement in another part of his testimony, but it merely served to create a contradiction in his testimony.

The jury had the power and authority to discard the testimony of the other witnesses and credit that of appellant. Numbers of witnesses alone cannot create a preponderance in testimony. The evidence of one witness might be worth more than that of a score of other witnesses. It is by the weight and not by the number that witnesses are to be judged—"pondire, non numero." Whatever may have been the rule in the past ages, a mere numerical preponderance in witnesses cannot control the decision of a court at this time. "In many cases a single witness, by the simplicity and clearness of his narrative, by the probability and consistency of the incidents he relates, by their agreement with other matters of fact too notorious to stand in need of testimony, a single witness (especially if situation and character be taken into account) will be enough to stamp conviction on the most reluctant mind. In other instances, a cloud of witnesses, though all were to the same fact, will be found wanting in the balance." Chamberlayne, Ev. § 991, note 2. The seventh, eighth, and ninth assignments of error are overruled.

[6] Through the tenth assignment of error appellant claims that the verdict is excessive. The evidence showed that the fall from the car broke the last bone of appellee's backbone, known as the coccyx, and it has never reunited. She also sustained an injury in her right side which caused a depression of her ribs. She was in bed for seven months, and for five months more could barely get around. She testified that she suffered in the back of her head and the end of her backbone, and had not been able to work except in a sitting position. She was earning from $50 to $60 a month, and was well and strong before she was hurt. We cannot hold a verdict in her favor for $4,750 excessive.

The judgment will be affirmed.

TALIAFERRO, J., did not sit in this case.