**STATE of Missouri, Respondent,**

**v.**

**Willie Sanchez DOWE, Appellant.**

**No. 52894.**

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Richard G. Altobelli, Special Asst. Atty. Gen., St. Louis, for respondent.

Morris M. Hatchett, St. Louis, for appellant.

STORCKMAN, Judge.

The defendant was convicted by a jury of robbery in the first degree. Section 560.120, RSMo 1959, V.A.M.S. A prior conviction within the purview of § 556.280 was charged and was conceded by the defendant. The court, therefore, assessed the punishment and sentenced the defendant to imprisonment for a term of fifty years. The defendant is represented on appeal by the same attorney who represented him at the trial.

The evidence tended to prove that the defendant violently assaulted the victim, Andrew Lee Whitlock, and robbed him of an amount in excess of four dollars. Mr. Whitlock, aged 61, residing at 4252 West North Market in the City of St. Louis, testified that he was retired from "the railroad" on disability by reason of a colostomy. On the morning of July 2, 1966, he left his home to take a walk. He met a friend Sam Benyon and they walked on together. They arrived at North Market and Pendleton about 8 a. m., at which time and place someone walked up behind Mr. Whitlock, grabbed him by "the collar of [his] neck", hollered "give me all your money", and started beating him on the head with a piece of concrete. The assailant was later identified by Mr. Whitlock as the defendant. Every time Mr. Whitlock would look around the defendant would hit him again. Mr. Benyon was a very sick man and during the attack he staggered and fell and then walked away. Mr. Whitlock was struck at least five or six times on various parts of the head and became dazed. He had four dollars and some change in his left pants pocket and about nineteen dollars in the right pocket. After he had been beaten several times, Mr. Whitlock put his hand in his left pocket and threw two dollars on the hood of a parked automobile hoping to get the defendant to stop beating him. The defendant again demanded all of the money, hit Mr. Whitlock some more, and ran his hand in the victim's left pocket, took the rest of the money and tore the pocket and trousers in doing so. Mr. Whitlock got free and turned and hit the defendant, causing him to drop the brick or piece of concrete. The defendant then ran towards a telephone booth, picked up a wine bottle and said, "now, I'm going to kill you." However, the defendant cut himself on the bottle, and when his hand started bleeding, he stopped

the attack and went away. When the defendant was arrested he was found to have a fresh cut on his hand.

Mr. Whitlock went about two blocks to Homer G. Phillips Hospital where he was treated and pictures were taken of the wounds on his head. Mr. Whitlock had never seen the defendant before, but the police apprehended him from the description given by Mr. Whitlock. The defendant was taken to the hospital and when he saw Mr. Whitlock the defendant in the presence of police officers said to his victim, "I'm going to whip your—so and so—every time I see you", or words to that effect.

Two members of the St. Louis Police Department arrested the defendant in a gangway adjoining Sklar's Market which is on the corner of North Market and Pendleton. This is a place where "winos" are accustomed to gather to drink and gamble. As the officers approached, the defendant was in a crouched position. When he saw the officers he arose and moved rapidly away in the opposite direction but halted when the officers commanded him to do so and drew their revolvers. The officers testified that Mr. Whitlock at the hospital identified the defendant as the robber and that the defendant threatened Mr. Whitlock with further beatings if he ever saw him "on the street." The police officers were unable to find anyone who would admit being a witness to the robbery. Mr. Benyon who had been in ill health died a short time before the trial which was about six months after the offense was committed. Mr. Whitlock did not tell the officers that Mr. Benyon was with him at the time of the robbery. His reason for not doing so was because of Mr. Benyon's ill health. None of the money taken from Mr. Whitlock was recovered. The doctor who treated Mr. Whitlock at the hospital testified and described the victim's physical condition, compared the pictures taken with his own findings, and stated the treatment given. The doctor also identified a hospital record on which he had noted that the patient had told him that

he had been attacked and beat up by a man with a piece of concrete. The defendant did not testify in the case. To the extent necessary, other evidence will be referred to in connection with the questions presented.

■ The sufficiency of the evidence to support the verdict is not directly attacked, but the defendant contends that "the verdict was improper as against the weight of the evidence and the concealment of evidence by the chief prosecution witness, the alleged victim." In support of this assignment, the defendant's only citation of authority is State ex rel. Raydel v. Raible, Ohio App., 117 N.E.2d 480, 40 A.L.R.2d 950. This is a bastardy proceeding against the alleged father and the annotation deals with the allowance of attorney fees in such cases. The case is cited apparently on the proposition of law that where a party fails to produce or explain the omission of relevant evidence within his control, the jury may infer that such evidence would be unfavorable to him. Missouri cases recognize similar legal principles, but they afford the defendant no basis for relief in this court. In the first place, Mr. Whitlock is not a party to the action. As the prosecuting witness he testified that he did not participate in a crap game behind Sklar's Market. One of the defendant's witnesses, who at the time of trial was serving a one-year sentence in the St. Louis Workhouse, testified he had seen Mr. Whitlock get in an argument and "scuffle" with the defendant as the result of a crap game. Mr. Whitlock in rebuttal denied the testimony and testified he did not know and had never seen the witness before and that his physical condition resulting from the colostomy would not permit him to do the things the witness claimed he did. This evidence as well as the victim's failure to tell the police of Mr. Benyon's presence went to the credibility of the prosecuting witness.

■ The determination of the credibility of witnesses is for the jury and the

testimony of a single witness if believed by the jury beyond a reasonable doubt is sufficient to support a conviction. State v. Williams, Mo., 376 S.W.2d 133, 136 [9, 10]. The weight of the evidence in a jury tried case is for the jury in the first instance and for the trial court on a motion for new trial, and the reviewing court cannot reverse a judgment on the ground the verdict is against the weight of the evidence. State v. Hodge, Mo., 399 S.W.2d 65, 67 [2]; State v. Perkins, Mo., 382 S.W.2d 701, 703 [1, 2]; City of Webster Groves v. Quick, Mo.App., 323 S.W.2d 386, 392 [11]. The assignment is denied.

■ Further the defendant contends that the indictment and trial were improper because Negroes were systematically excluded from effective participation in the grand jury that found the indictment and the petit jury that served at the trial. In support of this contention, the defendant relies chiefly on Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, and Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76, 1 A.L.R.2d 1286. Unlike these and other cases cited, there was no motion to quash the indictment in the case at bar. After the petit jury was selected and sworn, counsel for the defendant out of the hearing of the jury announced that he was "making a challenge to the array, based on the fact that the jury challenge was so selected so as to systematically exclude Negroes from the panel". No witness was sworn and no evidence was taken on the issue, but there was a colloquy between the court and counsel in the judge's chambers with the defendant present. It seems to be conceded that there were seven Negroes on the panel of forty veniremen from which the jury of twelve was chosen, and that one Negro remained and served as a juror after the state and defense had made their peremptory challenges. The defendant's counsel contended that ordinarily there should be "one third more or less" of Negroes on the panel if an impartial selection had been made by the jury commissioner. The court

called on defendant's counsel to submit proof that the officers had not performed their duties properly to which counsel responded that "the only proof is in the selection of the panel themselves" and that in his experience of ten or fifteen years "this has systematically existed." The court and the state's attorney also stated their views with respect to the operation of the system of selection which differed radically from those of defendant's counsel. Bare assertions of counsel during the trial of a case and statements in a motion for new trial do not prove themselves. 1 A.L.R.2d p. 1293, § 3, Anno: Jury Service—Discrimination. There was no direct proof that the defendant is a Negro. Mr. Whitlock testified he was low and chunky and "resembled a Mexican"; however, from the whole record we may infer that the defendant, the victim of the robbery, and all witnesses except one police officer were Negroes.

■■ The fact remains, however, that there is no proof of the percentage of Negroes in the population of the City of St. Louis, nor is there any proof of the number of Negroes called to jury duty over any period of time. State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949, 952 [1, 2]. The composition of a particular grand or petit jury, or a particular venire, does not constitute sufficient proof of a racial discrimination violative of constitutional rights. State v. Amerison, Mo., 399 S.W.2d 53, 55–56 [7, 8]; State v. Logan, 341 Mo. 1164, 111 S.W.2d 110, 114 [4]; 31 Am.Jur., Jury §§ 97, 98 and 99, pp. 87–90; 1 A.L.R.2d p. 1314, § 10, Anno: Jury Service—Discrimination; §§ 494.010 and 498.110, RSMo 1959. The contentions that Negroes were systematically excluded from the grand and petit juries are denied.

After the jury had begun its deliberations, it returned to the courtroom and through its foreman informed the court that some things were not clear to the jurors and stated they would like a transcript of the case. The court asked counsel for the state and for the defendant if either of them had any objection and both stated

they had none. The jury then went to lunch and court was in recess until the jury returned more than an hour later at which time the testimony requested was read to the jury in the presence of the court and counsel. After the jury retired for further deliberation, defendant's counsel objected to the reading of the testimony on the grounds, first, that the testimony of the prosecuting witness was read on direct but not the cross-examination and, secondly, the redirect examination of the prosecuting witness was not read. The court called the attention of defendant's counsel to the fact that he had consented and agreed that the court reporter could read what the jury requested. Counsel stated that he did not agree but merely acquiesced because he would be put in a position of trying to withhold certain evidence if he did not do so. The defendant's objection was overruled.

■■ The objection was not timely, and the trial court did not err in overruling it. The jury requested that the transcript be read and the defendant consented before the jury went to lunch. The defendant had an opportunity to withdraw his consent while the jury was absent during the period of more than an hour before the transcript was read. Furthermore, defendant's counsel could have made his objection out of the hearing of the jury at the time the request was made as was done on numerous other occasions throughout the trial. The Missouri rule is that the notes of the court reporter may be read to the jury if the parties to the action consent. Padgitt v. Moll, 159 Mo. 143, 60 S.W. 121, 125 [3], 52 L.R.A. 854; Small v. Wegner, Mo., 267 S.W.2d 26, 29 [2], 50 A.L.R.2d 170. In these circumstances the defendant was not entitled to withdraw his consent.

The defendant's final contention is that the court erred in failing to instruct on assault and the various degrees thereof. This assignment is based on the testimony of the workhouse inmate, Leroy Rawls, who testified that on the date in question he saw the defendant "scuffling" with an "elderly man" whom he later identified as Mr. Whitlock, but that the defendant did not strike Mr. Whitlock on the head at any time. Supreme Court Rule 26.02(6), V.A.M.R., cited by the defendant, is the same in legal effect as § 546.070(4), V.A.M.S., and requires the trial court to instruct on all questions of law necessary for the guidance of the jury whether requested to do so or not. The defendant says the failure of the court to instruct on assault was tantamount to telling the jury to disregard the testimony. We cannot agree with this assertion. The clear intent of the testimony was to counter the evidence of robbery and to induce the jury to believe that Mr. Whitlock lost his money in a dice game, that an argument started and a "scuffling" ensued.

■ Various assaults are covered by several sections of Chapter 559 of the statutes. The defendant does not undertake to tell the court even now what particular kind of assault on which the trial court should have instructed. The trial court was not required to search the statutes to find some offense which might possibly be included within the offense charged. State v. Hadley, Mo., 364 S.W.2d 514, 517–518 [9]. The evidence on which the defendant relies does not present an included offense but tends to exculpate the defendant entirely. On all the evidence, the defendant was either guilty of robbery in the first degree or he had committed no offense and was entitled to be discharged. The trial court did not err in failing to instruct on "assault and the various degrees thereof." State v. Sawyer, Mo., 365 S.W.2d 487, 492 [12]; State v. Thompson, Mo., 299 S.W.2d 468, 474 [16]; State v. Murray, Mo., 280 S.W.2d 809, 812 [7].

We have considered all questions presented by the defendant and find them to be without merit. We have also examined those parts of the record specified by S.Ct. Rule 28.02, V.A.M.R., and find them to be sufficient and free from error.

The judgment is affirmed.

All of the judges concur.