Catherine Ann OSBORNE, an Infant, by Clyde Osborne, Next Friend, Respondent,

v.

Gerald GOODMAN, an Infant, by Harry Gemke, Guardian ad litem, Appellant.

No. 44037.

Supreme Court of Missouri.

Division No. 2.

April 9, 1956.

Hinkel & Carey, St. Louis, for (defendant) appellant, C. J. Pursey, St. Louis, co-counsel.

Hullverson & Richardson, St. Louis, for (plaintiff) respondent.

LEEDY, Judge.

Action to recover damages for personal injuries sustained by plaintiff as the result of being struck by defendant's automobile on a public street in the City of St. Louis. The case was submitted upon humanitarian negligence in failing either to stop, or slacken speed or swerve. Verdict for defendant. Plaintiff's motion for new trial was sustained on the ground that the "court abused discretion in not permitting plaintiff's counsel additional time for argument, and error in giving instruction No. 7 on burden of proof." Defendant has appealed. The sum prayed in the petition, $22,500, determines "the amount in dispute" on this appeal, and hence jurisdiction is in this court.

The principals involved as parties to this action are minors. The plaintiff, Catherine Ann Osborne, was only seven years of age at the time of the casualty; the defendant, Gerald Goodman, nineteen. Enright Avenue extends east and west, and is approximately 30 feet in width. On the occasion in question cars were parked on both sides of the street, leaving approximately 16 feet in the center for two traffic lanes, one eastbound and the other westbound. The casualty occurred on Enright at a point 75 to 100 feet west of its intersection with Union Boulevard. Gerald was driving his 1947 Studebaker coach eastwardly on Enright as Catherine Ann was walking home from school with her ten-year-old brother, Billy. There was no dispute as to the fact that Catherine Ann ran from between two automobiles parked at the curb and into the path of defendant's automobile, and was struck and injured; but there was a sharp conflict in the evidence as to the course or direction she was traveling immediately before and at the time she was struck. Only four eyewitnesses testified; two on each side. Plaintiff's principal witness was a police officer who was standing at the west line of the intersection of Enright with Union Boulevard, a point 75 to 100 feet east of the point of collision. He testified that from that position he saw plaintiff walking west on the north side of Enright with some other children; that he saw her "run from in between two parked automobiles from the north side of the street to the south side of the street;" that she was running "mostly straight across, just slightly to the west;" that defendant was driving 20 to 25 miles per hour; that at the time he first saw defendant's car, plaintiff was then "about the space of a car from him * * * I would say 8 or 10 feet; maybe 10 feet" when she emerged from between the two cars; that she was running slightly towards him, and had almost made it across when she was struck by the right front edge of the car. The witness further stated that "defendant swerved to the left [the direction from which plaintiff was coming] and then put on his brakes and skidded, I guess, I don't know just how it happened. * * * He could have swung his car to the left, which he did, and he had almost cleared her, she had almost cleared the automobile * * * so he pulled to the left to try to avoid hitting her. If he had swung a little bit faster, he might have missed her, but just the right front of the car hit her * * * It all happened so fast, I would say he started to swing, and then jammed on or put on his brakes." He further testified that upon being struck "she spun like this (indicating) and rolled over to the north side of the street," a distance of 20 feet from the point of impact. He characterized defendant's reaction in putting on the brakes as "fast." He said there were skid marks 15 or 20 feet long.

Plaintiff's ten-year-old brother, Billy, her other eyewitness, testified that he watched Catherine Ann as she was trotting across the street from the north side to the south "going a little south and a little west;" that he saw defendant's car "about eight or ten cars away" before it hit her; that "she got almost all the way across when the car struck her;" that the right front part of the machine hit her. On cross-examination he acknowledged that he did not see defendant's automobile until after it hit the plaintiff; later, that he didn't "remember exactly," and still later, that he did see the

right front of the car hit her. He described the skid marks as "20 or 50 feet along there," but he was wholly unable to relate those distances to objects in the court-room. There were other discrepancies in his testimony as might be expected in that of a child of his age.

The two witnesses called on behalf of defendant in relation to the facts and circumstances immediately surrounding the casualty were defendant himself and the passenger in his car, Barton Herscher, an eighteen-year-old youth. Defendant stated that his brakes were in good condition; that he was traveling 20–25 miles per hour as he approached the scene of collision; that plaintiff darted out in front of his car from the south side of Enright between two parked cars; that he got a glimpse of her as she thus emerged "running at top speed," and a foot or two from his right side, in a northeast direction diagonally across Enright; that she was 5 feet in front of his car when he first got a glimpse of her emerging from between the two parked cars. He testified he then "turned the wheel as fast as I could to the left, when I seen her, and then I slammed on the brakes about the same time, and my car swerved around." The right front portion of his car struck her; she was then almost in the center of the street, or a little northeast of the center, and she ended up underneath another car parked on the north side of the street. On cross-examination the witness estimated the distance he was back of her at the time she came into the street as "about 10 feet." He was traveling 20 miles an hour, and stopped in 30 feet. As he approached the scene of the accident he was "riding the brakes" and all he would have had to do was to press down on the brakes and the brakes would take action. He estimated plaintiff traveled 10 to 15 feet from the time he first saw her until she was struck.

Without consuming further space in re-counting details, it may be said that the passenger, Herscher, corroborated the testimony of defendant.

It was in this state of affairs that the court gave instruction No. 7 on the burden of proof (supposed error in which was assigned as one of the reasons for granting a new trial) reading as follows:

"The Court instructs the jury that negligence in this case is not presumed, and the fact that the automobile of the defendant came in contact with the plaintiff is not enough in and of itself to justify a verdict against the defendant.

"The charge in this case is one of negligence and recovery may not be had on a charge of negligence except when such charge is sustained by the preponderance, that is, the greater weight of the credible evidence.

"It does not devolve upon the defendant to disprove said charge, but rather the law places the burden of proof in reference to said charge upon the plaintiff, and said charge of negligence must be sustained by the greater weight of the credible evidence. If, therefore, you find the evidence touching the charge of negligence against the defendant, as submitted to you in these instructions does not preponderate in favor of the plaintiff or is evenly balanced, then in either such event your verdict must be in favor of the defendant.

"By the expression 'greater weight or preponderance of the evidence' the Court means that evidence which is more convincing to you, as worthy of belief, than the evidence produced in opposition thereto."

■ Plaintiff invokes the doctrine that because of the superior position of the trial court to pass on the matter, an appellate court will usually defer to the findings of the trial court concerning the prejudicial effect of cautionary instructions on such grounds as abstract generality, over-emphasis, or confusing or misleading statements, and that when a motion for new trial has been sustained an appellate court will be more liberal in upholding such action than in reversing the judgment on the same ground on appeal. Morris v. E. I. Du Pont

De Nemours & Co., 351 Mo. 479, 173 S.W. 2d 39, 42, and cases there cited. But this rule or policy does not apply when the trial court has clearly abused its discretion or its ruling is plainly erroneous, especially as a matter of law. Jarboe v. Kansas City Public Service Co., 359 Mo. 8, 220 S.W.2d 27, 29. In this connection, see Warren v. Kansas City, Mo., 258 S.W.2d 681, 683, where it was said: "If in point of fact an instruction is not erroneous as to a matter of law or it is not fairly demonstrable upon the record that the instruction was misleading or may have otherwise deprived the losing party of a fair trial the rule is inapplicable."

It should be noted that although the motion for new trial charged that the verdict was against the weight of the evidence, that ground of the motion was not sustained.

There is nothing in the order to indicate that, insofar as the instruction was concerned, the court granted the motion for new trial on a discretionary ground. Indeed, the contrary appears from the recital that the motion "is sustained upon the error in giving instruction No. 7 on burden of proof." In Warren v. Kansas City, supra, the motion has been sustained upon the sole ground that " 'the court erred in giving to the jury instructions marked "A–B and C" ' and such was held to be "not a sustaining of a motion for a new trial on a discretionary ground but a mere finding that the instructions were erroneous as a matter of law." See, also, Took v. Wells, 331 Mo. 249, 53 S.W.2d 389; Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366; Cooper v. 804 Grand Bldg. Corp., Mo., 257 S.W. 2d 649.

We pass, therefore, to the question of whether the instruction is erroneous as a matter of law. The following taken from plaintiff's brief seems to fairly and concisely summarize her criticisms of the instruction which, in turn, make up the grounds upon which she contends the action of the trial court should be upheld: "It began with erroneous cautionary phrases about presumptions; it singled out one fact, the collision, for comment as a fact alone insufficient to warrant a verdict; it used the word 'charge' seven times, thus strongly suggesting that a criminal charge lay against defendant, requiring conviction, guilt and proof beyond a reasonable doubt; it twice informed the jury that the burden of proof rested upon plaintiff, and again suggested the same theme by telling the jury where the burden did not reside; it instructed the jury that if the proof hung in equipoise, a purely hypothetical situation which never existed in any case, plaintiff could not recover; it concluded with a proper enough definition of 'preponderance of the evidence.' However technically correct each phrase of the instruction might be when isolated for separate examination, the instruction as a whole was anything and everything except 'short,' 'simple' and 'concise.' "

This instruction is the counterpart of one that withstood substantially the same attack in Montgomery v. Ross, Mo., 218 S.W. 2d 99 (where it is set out as footnote 1), except that there is here incorporated, in the concluding paragraph, the definition of preponderance of evidence suggested in Rouchene v. Gamble Const. Co., 338 Mo. 123, 135, 89 S.W.2d 58, 63 [12].

Much has been said by this and other appellate courts about the desirability of submitting the law in relation to the burden of proof by a short, simple instruction. Mitchell v. Dyer, Mo., 57 S.W.2d 1082; Rouchene v. Gamble Const. Co., supra; Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, 694 [4].

In Montgomery v. Ross, supra, the court had before it the cases mentioned in the paragraph last above, as well as others relied on by plaintiff, and it was there held that the cautionary matter constituting the first sentence of the instruction was "not a misstatement of law;" that the phrase "charge of negligence" did not render the instruction erroneous as implying a wilful act comparable to criminal negligence, and pointed to the cases in which the "evenly balanced" clause had been approved. True, the Ross case said of the instruction that it "might have been in better form." But

this mild criticism—"qualified approval" as it was called in Price v. Schnitker, 361 Mo. 1179, 239 S.W.2d 296, 300, is not to be read as weakening the case as an authority on the questions decided, nor as authorizing the granting of a new trial here as for error as a matter of law. From what has been said it follows that court was not authorized to grant a new trial on the ground assigned with respect to the instruction.

Upon a reading of the whole record, including the arguments of counsel which have been preserved in the transcript, we are forced to the conclusion that the granting of the new trial on the ground that the court had abused its discretion "in not permitting plaintiff's counsel additional time for argument" itself constituted an abuse of discretion. The only really contested issue was that of negligence, the evidence on which has been set out. In addition to the four eyewitnesses who testified on that issue, the only other witnesses were: For plaintiff, her father, mother, and a physician who had examined plaintiff shortly before the trial; for defendant, a physician who had likewise examined plaintiff. The court allowed 20 minutes to each side for argument. There was no objection whatever to this allotment. The evidence in the case was not lengthy, nor were the issues at all involved. Three instructions were given at plaintiff's request. One declared the law with respect to the degree of care required of an operator of a motor vehicle upon the highways; her main recovery instruction submitting the hypothesis of negligence under the humanitarian doctrine; the third was on measure of damages. For defendant, the court gave, in addition to No. 7 on burden of proof: One submitting the converse of plaintiff's main instruction, one on "position of imminent peril," two cautionary in nature, and one on the credibility of witnesses.

The closing argument of plaintiff's counsel was interrupted when he sought to read a statement of the witness Herscher which was objected to as not having been offered in evidence. The objection was finally sustained, and counsel instructed "not to read from that paper." Another interruption occurred which involved the reading of a deposition. Near the conclusion of the closing argument the following occurred:

"By the Court: You have two minutes, Mr. Hullverson.

"By Mr. Hullverson: We have lost a lot of time, your honor, on account of counsel's interruptions.

"By the Court: I have allowed you that."

Counsel then resumed and concluded his argument without further protest, request or objection. The record substantiates the court's estimate of having compensated for the time lost on account of the interruptions, it appearing that the closing argument required 50% more space than was consumed in the opening on which counsel was stopped at "half time."

The transcript in this case wholly fails to comply with the "legal page" requirements of Section 485.100 RSMo 1949, V.A.M.S. Its deficiencies in that regard are so pronounced, flagrant and indefensible as to render the amount claimed for preparing the same excessive by at least one third. The amount claimed is therefore ordered reduced from $185.90 to $120, and, as thus reduced, will be taxed as costs in the trial court.

The order granting the new trial is reversed, and the cause remanded with directions to reinstate the verdict and to retax the cost of the transcript on appeal as hereinabove indicated.

DEW and ANDERSON, Special Judges, concur.