HARDY ET AL., APPELLANTS, v. FERGUSON MOVING & STORAGE CO., APPELLEE.*

(No. 8186—Decided November 5, 1956.)

Mr. *William A. McKenzie* and Messrs. *Graydon, Head & Ritchey,* for appellants.

Messrs. *Brumleve, DeCamp & Wood,* for appellee.

MATTHEWS, J. At the conclusion of the evidence, the Court of Common Pleas sustained the defendant's motion for an instructed verdict and thereafter entered judgment on the verdict

---

*Motion to certify the record overruled, October 9, 1957,

thus rendered. This appeal challenges the validity of this action of the trial court.

The undisputed evidence is that Pearl Assurance Company, Ltd., a plaintiff herein and hereinafter called Pearl, issued a master policy insuring "Oliver Skellet and Thomas Skellet, Jr., d. b. a. Skellett Company and/or Skellet Company, lessor," against liability which they might incur as a carrier of freight and authorizing them to issue certificates thereunder to consignors insuring them as well as the carrier and its agents against loss by fire.

Under this master policy, a certificate was issued to the plaintiff L. F. Hardy, insuring him against' loss or damage by fire to certain household articles which he had at that time delivered to Ballard Storage & Transfer Company at Richland, Washington, for shipment to Cincinnati.

Although there is some confusion in the record as to the relation between the Skellets, to whom the master policy was issued, and Ballard Storage & Transfer Company, the carrier that issued the bill of lading, the record leaves no doubt that the relation was such that Pearl became bound to and did indemnify Hardy against damage and loss resulting from fire of the household goods contained in this shipment, in accordance with the terms of the documents introduced in evidence, which we hold were admissible under the proved circumstances. And the record leaves no doubt that the carrier was included as one of the insured, and, as we shall point out later, the defendant was similarly covered as agent of the carrier.

Hardy was at the time changing his place of employment and his residence from Richland, Washington, to Cincinnati but had not obtained living quarters in Cincinnati at the time of this shipment. In the bill of lading he was named both consignor and consignee, but as he had no residence at the point of destination at the time, the bill of lading provided that upon arrival in Cincinnati the goods should be held under the provision for "storage in transit."

The bill of lading and the pertinent general rules and regulations of tariff 42A became a part of the policy of insurance. The phrase, "storage in transit," as defined in the tariff rules, meant the holding of the shipment in the warehouse of the car-

rier pending further transportation, and it was specifically provided that, "for the purposes of this rule, a carrier may designate any warehouse to serve *as its agent*."

When this shipment arrived in Cincinnati, it was delivered by the carrier to Ferguson Moving & Storage Company, the defendant in this case, in accordance with the direction in the bill of lading. Clearly, the defendant thereupon became the agent of the carrier and was one of the beneficiaries in this policy of insurance. By another provision, this relation was to terminate at the end of 60 days from the date of delivery to the defendant, but, as the loss occurred within 60 days, the limitation is unimportant.

While the property was being held under these circumstances, a fire occurred causing damage amounting to $6,024.45. Later, Pearl paid Hardy the sum of $5,500, which was the maximum liability under the policy issued by it.

In the petition, it is alleged that, upon payment by it of $5,500 to Hardy, Pearl by the terms of its policy became subrogated to the rights of Hardy to the extent of the payment made to him. As the insurance did not equal the loss, Hardy joined as a party plaintiff and joined in the prayer for $9,500, although the loss alleged and proved amounted to only $6,024.45.

The defendant answered either specifically or generally, denying the allegations of the petition and alleging that it was not negligent in any respect, and at the trial introduced the evidence proving the terms of the contract already set forth. In addition, the defendant sought to show that it had exercised the care required of it for the protection of the property stored with it.

At the conclusion of all the evidence, all parties moved for instructed verdicts, the plaintiffs, however, reserving the right to have the issues submitted to the jury in the event of an adverse ruling upon their motion. The court sustained the defendant's motion, saying, "I hold the parties are bound by the bill of lading, tariff, insurance policy, certificate, being exhibits 5, 6, 7, and 8, and, therefore, neither plaintiff is entitled to recover in the case. Motion of defendant to withdraw the evidence from the consideration of the jury and enter judgment for defendant will be granted."

It will be observed that the court based its ruling entirely upon the aforementioned exhibits, whose relevancy consisted solely in their tendency to establish the relation between the parties. The issue of due care on the part of the defendant was not reached, in the view of the case taken by the trial judge.

The record presents the question of whether the rights of the plaintiffs against the defendant are identical under the law. If their rights are different, and the pleadings and proof presented an issue of fact, then the particular plaintiff had a right to have that issue determined by the jury. We shall, therefore, consider the relation of each of plaintiffs to the defendant. We shall consider first the status of Pearl.

In sustaining the motion of defendant for an instructed verdict, the trial court based its conclusion on exhibits 5, 6, 7, and 8. These exhibits fixed the rights and liabilities of the parties. They show that Pearl agreed to indemnify the carrier and its agents, which included the defendant and the plaintiff shipper, to the maximum of $5,500 against loss by fire, while the shipment was in transit. Beyond the maximum of $5,500 the rights of the parties were determined by the applicable common and statutory law.

Before the carrier or its agent could sue on this policy, the premium would have to be refunded to the insured, but this provision could have no application to this situation. The defendant is not attempting to enforce the policy. The insurer paid voluntarily. Furthermore, the defendant tendered the premium at the earliest possible time.

When Pearl paid $5,500 to its coplaintiff, it did no more than to discharge its duty to the defendant. True, it owed this same duty to its coplaintiff and also the carrier, but as between the defendant and Pearl the policy of insurance placed the primary obligation upon Pearl to pay, and the discharge of an obligation by a principal debtor creates no cause of action against the person who, as between them, is secondarily liable. This rule is stated in 83 Corpus Juris Secundum, 600, Section 8, as follows:

"Subrogation is not available in favor of one primarily liable or one claiming under him." "It is not possible for a

person to be subrogated to his own rights. * * * subrogation is not allowed in favor of him who pays a debt in performance of his own obligation, since the right of subrogation never follows an actual primary obligation, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all.''

And weighing the rights and duties of the insurer and insured arising on this policy and resulting from the fire, the mere negligence of the insured directly causing the fire would not be available as a defense to the insurer. In 29 American Jurisprudence, 778, Section 1030, it is said, that ''a loss by fire, occasioned by the mere fault or negligence of the insured or his servants or agents, and without fraud or design, is a loss within a fire insurance policy, upon the general ground that the fire is nevertheless the proximate cause of the loss.'' There was no burden upon the insured to prove that he had exercised due care to protect his property so that a fire would not occur.

We are, therefore, of the opinion that the court did not err in sustaining defendant's motion for an instructed verdict in its favor against Pearl.

We now turn to a consideration of the defendant's motion for an instructed verdict in its favor against Hardy.

We find that Hardy occupies an entirely different legal position. He does not seek to be put in the place of another in order to enforce that other's right for his own advantage. The right which he asserts is a primary right in his favor based on the bill of lading issued to him and the delivery of his property to the defendant to be held by it for him under the provision of the bill of lading for storage in transit for not exceeding 60 days. By accepting this shipment from the carrier, the defendant became one of the instrumentalities used by the carrier to perform its duty to transport and deliver to Hardy, the shipper. Upon proof of the shipment and the delivery of the property to the defendant, and the failure or refusal of the defendant to deliver upon demand, Hardy established his case against the defendant and cast upon the defendant the burden of proving a lawful excuse for its failure to deliver. Whether defendant's

status was that of a carrier or a warehouseman would not change its duty to deliver upon demand. It is expressly provided by Section 1323.10, Revised Code, that, "in case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor * * *, the burden is upon the warehouseman to establish the existence of a lawful excuse for such refusal."

That statute was construed in *Hanlon* v. *J. E. Miller Transfer & Storage Co.*, 149 Ohio St., 387, 79 N. E. (2d), 220, wherein it is stated in the first and second paragraphs of the syllabus:

"1. Under the provisions of Section 8464, General Code [Section 1323.10, Revised Code], when a warehouseman refuses or fails to redeliver goods in compliance with a proper demand by the holder or depositor, the burden is on such warehouseman to prove the existence of a lawful excuse for such refusal or failure.

"2. The proof of such affirmative defense must be by a preponderance of the evidence."

An examination of the record in that case discloses that the defendant introduced a mass of evidence tending to show due care on its part, but failed entirely to account for the origin of the fire.

Recognizing its position in this regard, the defendant in the instant case, as an excuse or defense to its failure to deliver upon demand, pleaded that a fire occurred on its premises which caused damage to the property of Hardy, and that the cause of the fire and its continuation until it was quenched were not the result of any negligence on its part.

At the trial the defendant introduced evidence as to the construction of the warehouse and the precautions it had taken to protect property stored. The exterior of the warehouse was brick, and the interior was wood. It does not appear how old it was at the time. At some time a sprinkler system was installed, but its use had been discontinued, and only a few disconnected pipes remained in position. It was not operating at the time of this fire.

There was evidence that a sprinkler system's value in extinguishing fires exceeded any damage that might result from possible leakage.

In *Union Mutual Ins. Co.* v. *Indianapolis & Cincinnati R. R. Co.*, 12 O. D. Reprint, 745, 1 Disney, 480, it is stated in the syllabus:

"2. Fire cannot be considered, in itself, an unavoidable danger, and in case of loss from that cause, the carrier is bound to show the origin or cause of the fire, to bring himself within the exception; otherwise, the presumption is, it might have been avoided by proper care."

In the present case, it was admitted that the evidence failed entirely to disclose the origin of the fire.

As already noted, the trial court sustained the defendant's motion for an instructed verdict, on the ground that the exhibits showing the relation between these parties precluded both plaintiffs from recovering. The court did not pass upon the sufficiency of the defendant's evidence in support of its affirmative defense of due care or find that such defense was established as a matter of law. It was not considered, and, had it been, we are of the opinion that the court could not have so held, in view of the evidence and the law placing the burden upon the defendant. It is only in unusual circumstances that a court is justified in directing a verdict in favor of a party upon whom the burden of proof rests. In 39 Ohio Jurisprudence, 838, Section 203, it is said:

"* * * generally speaking, a verdict cannot be directed in favor of the party chargeable with burden of proof unless the issue is admitted by the opposing party in such wise as to dispense with proof, or unless the law attaches to such evidence as is produced the quality of being conclusive proof."

In *Small* v. *Wegner* (Mo.), 267 S. W. (2d), 26, 50 A. L. R. (2d), 170, the court applied this rule against a plaintiff upon whom the burden of proof rested and in favor of a defendant who had introduced no evidence. The court, quoting from an earlier Missouri case, said:

" 'The burden was not on the defendant, but was on the plaintiff to make out the case stated in his petition. In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tending to support the allegations of the petition, the defendant is entitled to have the

jury pass upon the credibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. The jury, in the first instance, is the sole judge of the credibility of the witnesses and of the weight and value of their evidence, and may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence be uncontradicted and unimpeached.' ''

We, therefore, conclude that even though Hardy had introduced no evidence to contradict the oral evidence of care exercised by defendant, which, however, we do not find, still Hardy would have been entitled to have the issue submitted to the jury.

For these reasons, the judgment as it relates to Pearl is affirmed, and, as to Hardy, the cause is remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment accordingly.*

Ross, P. J., and HILDEBRANT, J., concur.